PHEBE PELLETIER, Appellant, *v.* EMMA L. PELLETIER, Respondent.

No. 17594

September 30, 1987                    742 P.2d 1027

*Dennis A. Kist,* Las Vegas, for Appellant.

*Paul L. Larsen,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is a most unusual case, one in which a person who was not a party to a divorce action was allowed to prosecute a "counterclaim" for tortious conversion against the plaintiff in the divorce action. The court ruled against the tort "counterclaimant," and she now appeals.

The case began with the filing of a divorce complaint by Emma L. Pelletier against her husband, George N. Pelletier. George Pelletier is the son of Phebe Pelletier, the appellant.

Phebe, claiming that wife Emma sold some coins that belonged to her, decided to assert a conversion claim against her daughter-in-law by involving herself in Emma's divorce case. Phebe did this by filing a fugitive "counterclaim" in which she attempted to sue the divorce plaintiff Emma in tort on the ground that Emma had "converted to her own use" certain coins, personal property belonging to Emma.

Phebe, of course, was not a party to the *quasi-in-rem* divorce action and was not eligible to file a counterclaim in a divorce action in which, obviously, she was not a party. "A pleading may state as a counterclaim any claim *against an opposing party . . . .*" NRCP 13(b). (Emphasis supplied). No application was made for intervention under Rule 24, and the counterclaim was completely beyond the scope of the pleadings in the divorce action.

Curiously, divorce plaintiff Emma nonetheless filed a reply to the purported counterclaim, denying Phebe's allegations of conversion and claiming that Phebe's personal property was community property of the marriage.

The confusion already inherent in the litigation was compounded when Emma filed a "Second Amended Complaint for Divorce" in which she sued Phebe, Phebe's grandson (son of

George), a corporation, Tas Properties, Inc., and one Unette Wall, all newly named *defendants* in the divorce action. Each of the named defendants filed an answer and Phebe filed again her conversion "counterclaim" against Emma. Emma replied to Phebe's counterclaim with a general denial and an "affirmative defense" claiming that Phebe's allegedly converted property was community property of Emma and her husband George.

This teratoid divorce case went to trial without anyone recognizing that the tort action had not been properly pleaded before the court either as a counterclaim under Rule 13(b) or as a complaint in intervention authorized by Rule 24.

The trial judge found as a formal finding of fact that George had acquired some of the coins in question with community property funds and some other coins with his mother's money. The trial judge further found that the community coins and the mother's coins[1] were "commingled."

The trial court also found that because of the way George "handled the coins" Emma "justifiably" relied "on the presumption that the coins were community property." The trial court then concluded, Phebe "failed to show by a preponderance of the evidence" that Emma was "liable to her [Phebe] for property which Phebe Pelletier gave to defendant George Pelletier."

A decree of divorce was entered, and, at the same time Phebe's conversion claim stated as a counterclaim was dismissed.

There are two ways of looking at this case on review. One is simply to say that even with the apparent consent of the parties, Phebe's tort action could not be legally tried on these pleadings. If this view were followed, we would merely invalidate the order dismissing the counterclaim and allow Phebe to file whatever independent tort or other action that she might choose.

The other approach to the case is to recognize the error inherent in the court's findings and judgment and return the case to the same domestic relations court to decide the conversion issues in a reasoned and legal manner. Phebe's coins did not undergo a metamorphosis, changing into the community property of the married plaintiff and defendant, by being "commingled" with that property. Setting aside Phebe's weird intrusion into the divorce case and looking at this controversy in tort between Phebe and Emma as an independent claim for relief, there can be no presumption that Phebe's coins were the community property of Emma and George.

---

[1] It is undisputed that some of the coins were purchased with the mother's (Phebe's) money and that some of the coins were the mother's property, merely being stored by divorce defendant George.

Because the litigation has gone this far, we are reluctant to tell Phebe that she has to start all over in asserting her tort claim against Emma. In examining the evidence supporting Phebe's claim, we are compelled to conclude that, as a matter of law, Emma is liable to Phebe for tort of conversion.

An exercise of the rights of ownership sufficient to constitute conversion is present when a tortfeasor takes possession, sells the property, and pockets the proceeds of the sale. Wantz v. Redfield, 74 Nev. 196, 199, 326 P.2d 413, 414 (1958). Emma admitted at trial that she took the coins, cashed them in, and spent the money. The act of conversion is not excused by good faith or lack of knowledge. Bader v. Cerri, 96 Nev. 352, 356 n.1, 609 P.2d 314, 317 n.1 (1980).

Since the court found that Phebe had an ownership interest in some of the coins and evidence is undisputed that Emma seriously interfered with Phebe's dominion by cashing in the coins and spending the proceeds, the district court erred by not concluding that Emma converted the coins. We reverse the trial court's dismissal of Phebe's ''counterclaim'' for conversion and remand for further findings solely on the issue of damages.

Reversed and remanded.